IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEXIS HOLMES, et al.                    :

                                         :

        v.                               :    Civil Action No. DKC 17-2294

                                         :

WESTFIELD AMERICA, INC., et al.          :

                                         :

**MEMORANDUM OPINION**

Plaintiffs Alexis and Jasmin Holmes ("Plaintiffs") brought the instant action after being stopped, questioned and arrested in a Zara USA, Inc. ("Zara") store on May 30, 2014. Presently pending are: (1) the motion for sanctions filed by Defendant Westfield America, Inc. ("Westfield") (ECF No. 42); (2) the motion to compel and for sanctions filed by Defendant Westfield (ECF No. 43);[1] (3) the motion to dismiss or compel filed by Defendant Zara (ECF No. 44); (4) the motion for extension of time to file a response filed by Plaintiffs (ECF No. 49); (5) the motion for extension of time to complete discovery filed by Plaintiffs (ECF No. 54); (6) the motion for summary judgment filed by Defendant Zara (ECF No. 56); (7) the motion for summary judgment filed by Defendant Westfield (ECF No. 57); and (8) the motion for extension of time to file a response to Defendants' motions for summary judgment filed by

---

[1] The court previously granted Defendant Westfield's motion to compel and for sanctions in part compelling Plaintiffs to provide discovery. (ECF No. 48). The court withheld ruling on the sanctions until Plaintiffs responded.

Plaintiffs (ECF No. 61). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for extension of time to respond to Defendant Westfield's motion to dismiss or for sanctions will be denied, the motion for extension of time to respond to Defendants' motions for summary judgment will be granted, the motion for summary judgment filed by Defendant Westfield will be granted, the motion for summary judgment filed by Defendant Zara will be denied, the motion for sanctions filed by Defendant Westfield will be denied in part and granted in part, the motion to compel and for sanctions filed by Defendant Zara will be denied, and the motion to extend discovery filed by Plaintiffs will be denied.

## I. Factual Background

On May 30, 2014, Plaintiffs were shopping at a Zara store (ECF No. 62-2 ¶ 2) located at the Montgomery Mall, 7101 Democracy Boulevard, Bethesda, MD 20817 (ECF No. 56-2 ¶ 3). Although Zara maintains a company policy prohibiting more than one customer from using a single fitting room (ECF No. 56-2, at 3), Plaintiffs entered a single fitting room together to try on five items of clothing (ECF No. 62-2 ¶ 3). Allegra Saunders-Sawicky ("Ms. Saunders-Sawicky"), an assistant manager at the Zara store, informed Hayat Abdu ("Ms. Abdu"), the general manager, that Plaintiffs had entered a fitting room together. In response, Ms. Abdu "directed [Ms.] Saunders-Sawicky to pay attention to

[Plaintiffs]." (ECF No. 56-2, at 3). Ms. Abdu learned from an employee that a security sensor "was dropped on the floor in the fitting room which the young women were occupying." (ECF No. 56-2 ¶ 9). When Plaintiffs exited the fitting room, Ms. Abdu "discovered that the security sensor was missing from one blouse, and that the blouse had a large tear where the security sensor should have been." (*Id.* ¶ 13.) She concluded that Plaintiffs damaged the blouse and suspected that they were attempting to steal merchandise. Ms. Abdu then approached Plaintiffs and asked them to pay for the damaged blouse, stating that she would call the police and have a barring order issued against them if they refused to do so. (ECF No. 56-2 ¶ 18). Ms. Abdu and her staff contacted "either the Mall security or Montgomery County Police, or both."[2] (ECF No. 56-2 ¶ 19). Defendant Westfield placed multiple security officers around the store until police arrived. (*Id.* ¶ 24). Officers Nathaniel Brubaker and Edward Tamulevich of the Montgomery County Police received a radio broadcast from the 911 dispatch center requesting assistance at the Zara store. (ECF No. 57-4, at 4, p. 10). Upon their arrival, the officers learned that Zara employees suspected Plaintiffs of tearing the security sensor off of a white blouse. (ECF No. 57-4, at 5, p. 14). Two other

---

[2] The record clearly indicates that Ms. Abdu sought assistance from the Montgomery County Police, and it is likely that she asked for assistance from mall security as well. Plaintiffs state that two security officers were present before the police arrived (ECF No. 62-2 ¶ 24), and Officer Tamulevich testified that he remembered the presence of Mall security (ECF No. 57-4, at 5, p. 16).

members of the Montgomery County Police, Officer Gwynn and Sergeant Jenson, separately arrived at Zara in response to the request for police assistance. (ECF No. 57-4, at 5, p. 16). Officers Brubaker and Tamulevich took Plaintiffs into custody based on their conclusion that there was probable cause to arrest Plaintiffs for attempted theft and malicious destruction of property. (ECF No. 57-3, at 5, p. 16). Officer Brubaker prepared Montgomery County Trespass Notification Forms barring Plaintiffs from entering the Zara store for one year. (ECF Nos. 57-3, at 9, p. 30; 56-2, ¶ 24). Plaintiffs refused to sign the forms. (*Id.*, at p. 32). Plaintiff Alexis Holmes was charged with malicious destruction of property but the charges against her were dropped on August 21, 2014. (ECF Nos. 57-4, at 7, p. 21; 62-2 ¶ 41). No criminal charges were brought against Plaintiff Jasmin Holmes. (ECF No. 56-5, at 10).

The series of events, as told by Plaintiffs, Ms. Abdu, and Officers Tamulevich and Brubaker, is rife with inconsistencies. Ms. Abdu asserts that she directed Plaintiffs to use separate fitting rooms, but they nevertheless entered a fitting room together. (ECF No. 56-2 ¶ 6). Plaintiff Alexis Holmes states instead that "[n]o one [] ever told me I could not be in the room with another person." (ECF No. 62-2 ¶ 34). There is another discrepancy regarding Ms. Abdu's interactions with Plaintiffs after they exited the fitting room. Plaintiffs assert that they gave the items of clothing they did not want to purchase to another

4

employee after leaving the fitting room and Ms. Abdu then
approached them asking to look in their bag. (ECF No. 62-2 ¶¶ 13,
16). In contrast, Ms. Abdu asserts that Plaintiffs handed several
articles of clothing directly to her immediately after exiting the
fitting room and that she approached Plaintiffs as they headed
toward the store exit to ask them about paying for the ripped white
blouse. Ms. Abdu's version of events, however, never states that
she asked Plaintiffs to look in their bag. (ECF No. 56-2 ¶¶ 12-
18). Finally, Plaintiffs maintain that Zara employees asked them
to sign documents before the police arrived. (ECF Nos. 62-2 ¶¶
22, 25; 56-5, at 5). However, Officer Brubaker testified that the
trespass forms are "police forms" that the officers brought to the
store. (ECF No. 57-3, at 8, p. 30). He did not see Plaintiffs
refuse to sign any other document, but states that Plaintiffs could
have been asked to sign a Civil Demand form before the police
arrived. (*Id.*, at 9, pp. 31-32).

## II. **Procedural Background**

On April 19, 2017, Plaintiffs brought suit in the Circuit
Court for Montgomery County against Westfield, Zara, and Ms. Hayat
Abdu. (ECF No. 2). The complaint alleges three counts: (1) false
arrest, (2) false imprisonment and (3) respondeat superior.
Defendant Zara removed the action on August 11. (ECF No. 1). On
October 2, Plaintiffs were ordered to provide a status report
regarding service as to Defendant Westfield and Ms. Abdu within
fourteen days. (ECF No. 15). Twenty-nine days later, on October

5

31, Plaintiffs submitted the report indicating that they had not effectuated service and could provide a further update on November 15. (ECF No. 16). On November 16, when no update had been provided, the court issued a Show Cause Order providing Plaintiffs with fourteen days to respond and show cause why the non-served parties should not be dismissed. (ECF No. 19). Plaintiffs timely responded and requested additional time which was granted. (ECF Nos. 25, 26).

After finally being served, Defendant Westfield moved to dismiss on December 6, 2017. (ECF No. 27). On December 27, Plaintiffs belatedly responded to the motion to dismiss. (ECF No. 28). Plaintiffs also requested leave to file an amended complaint but did not follow the proper procedure for amending a complaint. (ECF Nos. 29, 30). As Plaintiffs had still not served Ms. Abdu, on January 12, 2018, the court again ordered Plaintiffs to show cause why Ms. Abdu should not be dismissed. (ECF No. 33). Plaintiffs did not respond.

On January 31, 2018, the court issued an opinion and an order dismissing Ms. Abdu and denying Defendant Westfield's motion to dismiss. (ECF No. 34). The court entered a scheduling order on February 1. (ECF No. 37). On April 5, Defendant Westfield moved for sanctions alleging that it had properly noted depositions but that Plaintiffs had failed to appear. (ECF No. 42). Defendant Westfield also moved to compel and for sanctions alleging that it provided Plaintiffs with discovery requests on March 1 but had not

received any responses by April 6. (ECF No. 43). On May 3, Defendant Zara moved to compel alleging that Plaintiffs had failed to respond to any written discovery requests and failed to appear at the depositions. (ECF No. 44).

The court held a telephone conference on May 8, 2018. According to Plaintiffs' counsel, Landon White ("Mr. White"), although he received emails, mail, and notifications via the electronic court filing system ("ECF"), he was unaware of the deposition and, thus, apparently did not tell his clients to appear. Mr. White represented during that call that he would have responses "by the end of the week, no later than next Monday [May 14]." Telephone Conference at 9:07:53, 9:12:46, *Holmes v. Westfield*, No. DKC-17-2294 (D.Md. May 8, 2017) ("Telephone Conference"). When asked if Plaintiffs were taking discovery, Mr. White represented that they were and that "we have our discovery ready" (*id.* at 9:17:23) and that he did not "think there would be any holdup on [his] end" (*id.* at 9:19:32). During the call and then in an Order memorializing its decision, the court gave Mr. White until May 14 to respond to discovery and until May 18 to respond to the motions for sanctions. (*Id.* at 9:22:36; ECF No. 48).

Despite the statements during the call and the court's order, Plaintiffs did not respond to all the discovery requests by May 14 and did not respond to the motions for sanctions by May 18. On May 23, 2018, Plaintiffs moved for an extension of time in which

to file their response to the motion for sanctions. (ECF No. 49). Defendant Westfield opposed the motion. (ECF No. 50). Plaintiffs filed their response to the motion for sanctions on May 25. (ECF No. 51). On June 18, Plaintiffs moved to extend the time to complete discovery. (ECF No. 54).

Defendant Zara moved for summary judgment on July 11, 2018 (ECF No. 56) and Defendant Westfield moved for summary judgment on July 16, 2018 (ECF No. 57). Plaintiffs twice moved for an extension of time in which to file their response to the motions for summary judgment. (ECF Nos. 59 & 61). The court granted Plaintiffs' first motion on July 30, 2018. (ECF No. 60). Plaintiffs filed their second motion, which remains pending, with their single response to both motions for summary judgment on August 26, 2018. (ECF Nos. 61 & 62). Defendants Zara and Westfield filed responses in opposition to Plaintiffs' August 26, 2018 motion for extension of time on August 27, 2018 (ECF No. 63) and September 10, 2018, respectively (ECF No. 65).

To sum up, counsel for Plaintiffs, Mr. White, has missed deadlines on at least nine occasions. (ECF Nos. 16, 19, 28, 42, 44, 48, 59, 61). On four occasions, this court has ordered a response and only once did Mr. White do so in a timely fashion. Mr. White has also failed to follow local rules (ECF Nos. 20 & 29), ignored opposing counsel's discovery requests, and has not complied with the Federal Rules of Civil Procedure. Perhaps most

troublingly, he has not been faithful to the statements he made to the court.

## III. Motions for Extension of Time to Respond

The Defendants moved for sanctions (ECF Nos. 42, 43, 44), and the court ordered a response by May 18 based on Mr. White's representation during the telephone conference that he could file a response by that time (ECF No. 48).[3] Five days after his response was due, Mr. White sought leave to extend the time on the ground that he did not have access to ECF. (ECF No. 49). Ironically, as Defendant Westfield noted, he filed the motion to allow late filing on ECF, and, thus, proved that at least by May 23, he had access to ECF and could have filed a response.

Fed.R.Civ.P. 6(b) governs extension of time, and it allows for an extension of time "after the time has expired if the party failed to act because of excusable neglect." Rule 6(b)(1)(B). The excusable neglect standard permits courts "to accept late filings caused by inadvertence, mistake, or carelessness[.]" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). "Generally, excusable neglect . . . require[s] a demonstration of good faith on the part of the party seeking an extension of time and some reasonable basis for noncompliance within the time specified in the rules." 4B Charles Alan Wright

---

[3] As explained, the motion for sanctions concerns counsel's conduct and not Plaintiffs' conduct. Accordingly, the court will refer to counsel rather than Plaintiffs in this section.

& Arthur R. Miller, Federal Practice & Procedure § 1165 (4th ed. 2018).

Here, Mr. White has provided no reason why he needed extra time. He agreed to file his response by May 18, and, despite his representation and having over a month to file the response, he did not have the response ready. He does not mention any steps he took to prepare the response and does not explain why it was not filed. Instead, counsel explains why his motion for leave to allow late filing was, itself, late. Mr. White has provided no justification for the late filing of his response. Accordingly, the motion for leave to allow late filing will be denied.[4]

Mr. White also requested an extension of time to file a response to Defendants' motions for summary judgment (ECF Nos. 56, 57, 61). Mr. White's response to Defendant Zara's motion was due on July 25, 2018 and his response to Defendant Westfield's motion was due on July 30, 2018. *See* Local Rule 105.2. Mr. White's request for additional time states that he experienced technical difficulties and, as a result, could not access Plaintiffs' affidavits. Mr. White filed an opposition to both motions about a month after the required response date on August 26, 2018. (ECF No. 62). "Excusable neglect is not easily demonstrated . . . [and] a district court should find [it] only in the *extraordinary cases*

---

[4] Although the motions to compel and for sanctions are therefore unopposed, the court will still review the merits of the motions before deciding whether to grant the relief requested.

where injustice would otherwise result." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996) (internal quotation removed). Here, Plaintiffs would suffer serious injustice due to Mr. White's carelessness if their opposition could not be considered in response to Defendants' motions for summary judgment. Thus, Plaintiffs' motion to extend time to respond to Defendants' motions for summary judgment will be granted.

## IV. Motions for Summary Judgment

### A. Standard of Review

A motion for summary judgment will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the movant generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy*

*Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . which that party will bear the burden of proof at trial[,]" there can be no "genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

## B. False Arrest and False Imprisonment

Defendants Zara and Westfield both assert that they possess immunity from Plaintiffs' claims under the shopkeeper's privilege, Md. Code Ann., Cts. & Jud. Proc. § 5-402(a), and Plaintiffs' claims fail because they cannot prove a deprivation of liberty. (ECF Nos. 56, at 2; 57-1, at 11). Plaintiffs respond that Defendants are not entitled to judgment based on the shopkeeper's privilege because there is a dispute as to whether there was probable cause to arrest Plaintiffs. (ECF No. 62, at 1). Plaintiffs briefly address Defendants' deprivation of liberty argument, stating that "the staff['s] mere presence blocking the door as well as Plaintiffs not being allowed to leave the store was a clear deprivation of their rights." (ECF No. 62-1, at 3).

In Maryland, "[t]he elements of false arrest and false imprisonment are identical." *Heron v. Strader*, 361 Md. 258, 264 (2000). Both torts require: (1) the deprivation of the liberty of another, (2) without consent, and (3) without legal justification. *Id.* "To constitute a case of false imprisonment there must be some direct restraint of the person[.] Any exercise of force, or threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Estate of Jones v. NMS Health Care of Hyattsville, LLC*, 903 F.Supp.2d 323, 331 (D.Md. 2012) (quoting *Mason v. Wrightson*, 205 Md. 481, 487 (1954)). Plaintiffs must demonstrate that Defendants lacked legal justification at the time that the deprivation of liberty occurred. *Cf. Collins v. State*, 322 Md. 675, 679 (1991) (explaining that the legality of a warrantless arrest is evaluated at the time of arrest).

The shopkeeper's privilege, codified at Md. Code Ann., Cts. & Jud. Proc. § 5-402(a), acts as a complete defense in cases of false imprisonment:

> A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for detention, slander, malicious prosecution, false imprisonment, or false arrest of the person detained or arrested, whether the detention or arrest takes place by the merchant or by his agent or employee, if in detaining or in causing the arrest of the person, the merchant or the agent or employee of the merchant had, at the time of the

13

> detention or arrest, probable cause to believe
> that the person committed the crime of
> "theft," as prohibited by § 7-104 of the
> Criminal Law Article, of property of the
> merchant from the premises of the merchant.

*See also Silvera v. Home Depot U.S.A., Inc.,* 189 F.Supp.2d 304, 310 (D.Md. 2002) ("A retail merchant with probable cause, however, has a complete defense to false imprisonment."). Probable cause exists where a merchant has "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." *Banks v. Montgomery Ward & Co.*, 212 Md. 31, 39 (1957). The court cannot resolve a motion for summary judgment based on the shopkeeper's privilege where the existence of probable cause is disputed. *Silvera*, 189 F.Supp.2d at 304 ("If the facts regarding probable cause are undisputed, then the question of probable cause is one of law for the court."); *see also Pegues v. Wal-Mart Stores, Inc.*, 63 F.Supp.3d 539, 543 (D.Md. 2014).

### 1. Defendant Westfield

As a preliminary matter, Defendant Westfield's motion for summary judgment states that "Plaintiffs allege a single count of false imprisonment against Westfield." (ECF No. 57-1, at 2). Because Counts I and III of Plaintiff's complaint do not allege any violations based on Defendant Westfield's actions and Plaintiffs fail to dispute Defendant Westfield's conclusion, it appears that Plaintiffs only alleged one count of false imprisonment against Defendant Westfield.

Defendant Westfield argues that the presence of security guards did not deprive Plaintiffs of their liberty, relying on Ms. Abdu's statements that "she did not hear Westfield security say anything to the Plaintiffs, nor did she witness Westfield security touch or otherwise restrain the Plaintiffs." (ECF No. 57-1, at 11). Plaintiffs' bare-bones opposition is unclear and fails to address Defendant Westfield's argument beyond Plaintiffs' general statement already referenced above.

Although Officer Brubaker does not remember seeing any security officers in the Zara store when he arrived (ECF No. 57-3, at 5, p. 14), Officer Tamulevich testified that "[m]all security was present" (ECF No. 57-4, at 5, p. 16). Plaintiffs also state in their complaint, affidavits and discovery that there were two security officers in the store who did "not allow[] Plaintiffs to leave." (ECF Nos. 2 ¶ 9; 62-2 ¶ 24; 62-3 ¶ 24). However, Officer Tamulevich could not recall if the security officers interacted with Plaintiffs, and Plaintiffs do not provide any evidence of the security officers' actions beyond asserting their presence and stating that they "tried to make us pay for the shirt." (ECF Nos. 57-4, at 5, p. 16; 56-5, at 5; 56-8, at 5).

Plaintiffs' claim against Defendant Westfield omits pertinent information, such as the physical location of the officers, what, if anything, the officers said to Plaintiffs, and how the officers might have expressed force against Plaintiffs. The mere presence of security officers in a store is not enough to demonstrate that

the security officers exercised "force or threat[s] of force" to deprive Plaintiffs of their liberty. *Lipenga v. Kambalame*, 219 F.Supp.3d 517, 527 (D.Md. 2016) (holding that plaintiff "fail[ed] to state a claim for false imprisonment" because she did not allege facts demonstrating that defendant used force or threats of force to confine her). Summary judgment is appropriate as to Plaintiffs' false imprisonment claim against Defendant Westfield because, even when viewed in the light most favorable to Plaintiffs, the claims are mere allegations devoid of colorable evidence. Consequently, analysis of Defendant Westfield's remaining argument for immunity under the shopkeeper's privilege is unnecessary.

### 2. Defendant Zara

Defendant Zara points to the shopkeeper's privilege as a complete defense to Plaintiffs' false arrest and imprisonment claims. Defendant Zara recognizes that the shopkeeper's privilege only applies at the summary judgment stage if probable cause is not in dispute, but counters that "[t]he existence or absence of probable cause in this case is a matter for the [c]ourt, not for the jury." (ECF No. 56-1, at 17). Plaintiffs spend their entire opposition disputing the applicability of the shopkeeper's privilege. Their opposition states:

> Plaintiffs in this case were arrested without probable cause. Defendants state only one sensor device hit the ground while the Plaintiffs were in the dressing room. Plaintiffs were not in possession of any shoplifting tools and upon leaving the dressing room, Plaintiffs properly handed over

> the materials to the store employees.
> Declaration of Jasmin Holmes ¶ 17. Three items
> were given to the store employee working by
> the dressing room and the other two were given
> to the cashier to hold on layaway. Declaration
> of Alexis Holmes ¶ 13. As the Plaintiffs were
> leaving the store they were approached about
> stealing. There were no items in their
> possession that belonged to Zara. *Id.* ¶ 19.
> Zara then checked the bag of the [] Plaintiffs
> and no items were found.

(ECF No. 62-1, at 1). Plaintiffs conclude that, "[d]ue to the lack of probable cause, the Maryland Shopkeepers Provision doesn't apply." (*Id.*, at 3).

Maryland defines theft as the knowing or willful taking of the property of another with the intention to deprive the owner of the property. *See* Md. Code Ann., Crim. Law § 7-104. Defendant Zara states that Ms. Abdu had "probable cause to believe Plaintiffs were shoplifting" because Plaintiffs: (1) entered the same fitting room against company policy, (2) dropped a security sensor on the floor while in the fitting room, and (3) returned a ripped blouse without explanation after exiting the fitting room. Plaintiffs state that they entered the fitting room carrying five items. After leaving the fitting room, Plaintiffs handed "three items to the employee and took two items to the cashier." (ECF No. 62-2 ¶ 13). All five of the items that were in Plaintiffs' possession when they entered the fitting room were accounted for after Plaintiffs exited the fitting room. Based on this account, Ms. Abdu had little reason to suspect that Plaintiffs did anything more than *attempt* to steal the white blouse.

17

Defendant Zara recognizes that, when viewed in the light most favorable to Plaintiff, the evidence demonstrates that Ms. Abdu only had probable cause to believe Plaintiffs attempted theft. (ECF No. 56-1, at 19). Nevertheless, Defendant Zara implores application of the shopkeeper's privilege, asserting that "[e]ven if Zara was mistaken in thinking Plaintiffs were engaging in criminal activity, the mere fact it reasonably believed otherwise based upon the information in its possession at the time, whether accurate or not, establishes probable cause." (*Id.*) Defendant Zara's conclusion is mistaken because, as the Court of Appeals of Maryland clarified in *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 658 (1970), "no probable cause . . . for detention exists until the suspected person actually attempts to leave without paying." Even if Ms. Abdu believed Plaintiffs attempted to steal the blouse while in the fitting room and then aborted their plan, this belief is not a sufficient basis for her to form probable cause that Plaintiffs were committing theft after exiting the fitting room and returning the torn blouse. Thus, Defendant Zara is not entitled to immunity under the shopkeeper's privilege.

Defendant Zara next argues that Plaintiffs' claims for false arrest and imprisonment fail because Plaintiffs cannot demonstrate that they were deprived of their liberty. Defendant Zara relies on the unpublished opinion *Mills v. PPE Casino Resorts Maryland, LLC*, No. CV RDB-15-495, 2017 WL 2930460 (D.Md. July 10, 2017), as support that the evidence of force here is not enough to survive

summary judgment. There, the plaintiff alleged civil rights and tortious violations by a casino whose employees ushered plaintiff off the casino floor and accused him of card counting. *Mills v. PPE Casino Resorts Maryland, LLC*, No. CV RDB-15-495, 2017 WL 1862474, at *2 (D.Md. May 8, 2017). Security videos captured casino employees surrounding plaintiff on the casino floor, grabbing his arm and placing him in a security hold, removing him to a secure back hallway, and standing between him and the exit of the casino. Plaintiff reported that casino employees also verbally instructed him that he was not permitted to leave. Finding that the casino employees applied force to detain plaintiff, Judge Bennett held that "no reasonable person could conclude Plaintiff was free to leave." *Mills*, 2017 WL 2930460, at *4.

That the level of force applied in *Mills* fulfilled the deprivation of liberty requirement of false imprisonment and exceeds the force alleged here is not wholly indicative of Defendant Zara's innocence. Plaintiffs state that two Zara employees blocked them from moving toward the store exit, denied their request to wait in the hallway, and tried "to force [them] into a room." (ECF No. 62-2, at 2; 62-3, at 2). The allegations of force here pale in specificity and potency to those advanced in *Mills,* but they nevertheless state that Zara employees applied force to prevent Plaintiffs from leaving the store. Viewed in the

light most favorable to Plaintiffs, the evidence demonstrates that Plaintiffs were deprived of their liberty.

Moreover, there is no dispute that Defendant Zara relayed information to the Montgomery County Police, prompting them to take Plaintiffs into custody. Ms. Abdu gave an account of Plaintiffs' conduct to Officers Brubaker and Tamulevich, but the details are unclear. (ECF Nos. 57-3, at 4, p. 12; 57-4, at 6, p. 19; 56-2 ¶ 22). Pursuant to Maryland law, private parties who instigate an allegedly wrongful arrest can be liable for false imprisonment. *Montgomery Ward v. Wilson*, 339 Md. 701, 722 (1995) ("If a person wrongfully procures another's arrest without probable cause, for example by falsely informing a police officer that the factual basis for a warrantless arrest exists, then the tort of false imprisonment may lie against the instigator even though the police officer would not be liable for false imprisonment."). Thus, Defendant Zara may be responsible for Plaintiffs' deprivation of liberty based on the subsequent actions of the police.

Finally, Defendant Zara argues that Plaintiffs consented to remain in the Zara store because, if they paid for the shirt, Zara employees would allow them to leave. However, Defendant Zara cites no support for this proposition. The Maryland Court of Special Appeals found that "voluntary consent to confinement nullifies a claim of false imprisonment" where an employer confines an employee and the only threat to the employee is loss of employment. *Carter*

*v. Aramark Sports & Entm't Servs., Inc.*, 153 Md.App. 210, 250 (2003) (quoting *Hanna v. Marshall Field & Co.*, 279 Ill.App.3d 784, 793 (1996)). Maryland has not, however, found consent in the "[p]ay-and-[g]o" context Defendant Zara references here. Plaintiffs' refusal to pay for an item that they maintain they did not damage hardly qualifies as consent to remain on the premises. (ECF No. 56-1, at 23). Accordingly, Defendant Zara's motion for summary judgment is denied as to Plaintiffs' false arrest and imprisonment claims.

### C. Respondeat Superior

Count III of Plaintiffs' complaint alleges a respondeat superior claim against Defendant Zara based on Ms. Abdu's actions. (ECF No. 2 ¶ 31). Defendant Zara states that it is "entitled to judgment as a matter of law with respect to . . . Count III []  under the Maryland Shopkeeper's Privilege." (ECF No. 56-1, at 6). For reasons discussed above, Plaintiff's claims are not subject to the shopkeeper's privilege. However, "there is no separate cause of action for respondeat superior." *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 n.8 (D.Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F.App'x 297 (4th Cir. 2013). Thus, Plaintiffs' claim for respondeat superior is dismissed to the extent that it intends to allege a separate cause of action.

### D. Defamation

Plaintiffs' complaint mentions within Count III, entitled respondeat superior, that "[Ms.] Abdu, while on duty as store

manager defamed . . . Plaintiffs." (ECF No. 2, at 5). Defendant

Zara asserts that Plaintiffs' potential defamation claim is time-

barred because Maryland law requires defamation claims to be filed

within one year after the alleged defamation occurs. (ECF No. 56-

1, at 24). Plaintiffs' opposition loosely defends their so-called

claim, stating that "Zara is not entitled to [j]udgment to any

[d]efamation [c]laim or suit to Jasmin because she just turned 18

years old in June of 2018." (ECF No. 62-1, at 3).

"An action for assault, libel, or slander shall be filed

within one year from the date it accrues." Md. Code Ann., Cts. &

Jud. Proc. § 5-105. Plaintiff Alexis Holmes reached an age of

majority prior to the May 30, 2014 incident. The statute of

limitations for her to bring a defamation claim ran on May 30,

2015. The limitations period has not expired as to Plaintiff

Jasmin Holmes because "statutory time limits for a minor to bring

an action do not begin running until the age of majority has been

firmly established." *Doe v. Roe*, 419 Md. 687, 694 (2011) (quoting

*Piselli v. 75th St. Med.,* 371 Md. 188, 212 (2002). Thus, to the

extent that Plaintiffs' intend their complaint to assert a

defamation claim against Defendant Zara, the claim is dismissed as

to Plaintiff Alexis Holmes.

**V.    Defendant Zara's Motions to Compel and for Sanctions**

Defendant Zara moves to compel and for the action to be

dismissed as a sanction for discovery violations pursuant to

Fed.R.Civ.P. 37. (ECF No. 44). Defendant Zara has now received

its entire discovery. (ECF No. 53). Thus, its motion to compel is moot. Its request for sanctions, nevertheless, is live.

Mr. White has been extraordinarily inattentive to the case, but "[a] dismissal sanction is usually inappropriate when it unjustly penalizes a blameless client for the attorney's behavior." *Hillig v. C.I.R.*, 916 F.2d 171, 174 (4th Cir. 1990); *see Dunbar v. Triangle Lumber & Supply Co.*, 816 F.2d 126, 129 (3d Cir. 1987) (concluding that a district court should not dismiss a case based on the attorney's dereliction of discovery duties without evidence that the party bore responsibility for the abuses); *accord Dodson v. Runyon,* 86 F.3d 37, 40 (2d Cir. 1996); *VanHaaren v. State Farm Mut. Auto Ins. Co.*, 989 F.2d 1, 9 (1st Cir. 1993). Defendant Zara provides no evidence that Plaintiffs were made aware of the depositions or in any way participated in the discovery abuses, and Plaintiffs will not be punished for their attorney's transgressions. Accordingly, Defendant Zara's motion to compel and for sanctions will be denied.

Defendant Zara has been prejudiced in costs and with the burden of having this case hanging over it for far too long. The court reserves the right to reconsider potential sanctions against Mr. White if his inattentiveness continues and Defendant Zara is further prejudiced.

## VI. Defendant Westfield's Motion for Sanctions

Defendant Westfield moves for sanctions pursuant to Fed.R.Civ.P. 37(d). (ECF Nos. 42 & 43). "Rule 37(d) of the

Federal Rules of Civil Procedure gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). Under Rule 37(d), "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure[.]"

Sanctions to cover the expenses incurred due to the deposition are unreasonable. Due to Mr. White's lack of communication, Defendant Westfield had no reason to expect that he would appear at the deposition with his clients.

The expenses Defendant Westfield incurred in moving to compel and for sanctions, however, were reasonable based on Mr. White's continued delinquency. When Mr. White refused to respond to discovery requests, did not answer emails, and did not return phone messages, Defendant Westfield was justified in moving to compel, and the expenses incurred in preparing the motion were reasonable. Likewise, under these circumstances, a motion for sanctions was justified, and the expenses incurred in preparing the motion were reasonable. The court will order Mr. White to pay Defendant Westfield $630.00 representing the $332.50 it cost to prepare the motion for sanctions (ECF No. 42-5) and the $297.50 it cost to prepare the motion to compel and for sanctions (ECF No. 43-7).

## VII. Plaintiff's Motion to Extend Discovery

Plaintiffs move to extend discovery. (ECF No. 54). Defendant Zara argues against any extension in discovery, noting that Plaintiffs have not issued any written discovery requests or noted any depositions and missed the depositions of third-party witnesses. Pursuant to Fed.R.Civ.P. 16(b)(4), "[a] schedul[ing order] may be modified only for good cause[.]" "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997)). Here, Plaintiffs have not shown good cause. They had ample opportunity for discovery and have not even begun discovery. They have provided no reason for the delay. Accordingly, Plaintiffs' motion will be denied.

## VIII. Conclusion

For the foregoing reasons, the motion for extension of time to respond to Defendant Westfield's motion to dismiss or for sanctions will be denied, the motion for extension of time to respond to Defendants' motions for summary judgment will be granted, the motion for summary judgment filed by Defendant Westfield will be granted, the motion for summary judgment filed by Defendant Zara will be denied, the motion for sanctions filed by Defendant Westfield will be denied in part and granted in part,

the motion to compel and for sanctions filed by Defendant Zara will be denied, and the motion to extend discovery filed by Plaintiffs will be denied.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge